UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                            Case No. 98-80147

Jerome Wood,                                    Sean F. Cox
                                                         United States District Court Judge
      Defendant.
_____/

**OPINION AND ORDER DENYING MOTION FOR RELEASE FROM CUSTODY AND
MOTION FOR APPOINTMENT OF COUNSEL (ECF No. 33)**

In 1998, Defendant Jerome Wood robbed a bank and a gas station at gunpoint. The federal government prosecuted Wood for the bank robbery and the State of Michigan prosecuted him for the gas station robbery. In state court, Wood went to trial, lost, and received a sentence of at least 20 years. In federal court, Wood pleaded guilty and the Honorable Lawrence P. Zatkoff imposed a 188-month sentence that would run consecutive to Wood's state sentence.

Wood spent two decades in state prison. In May 2018, Wood finished his state sentence and was transferred to federal prison to begin the sentence imposed by Judge Zatkoff.

Wood now moves for compassionate release, arguing that he is at risk of developing life-threatening symptoms if he contracts the novel coronavirus ("COVID-19") because he suffers from hypertension and other heart problems. Wood also asks the Court to appoint counsel to represent him. The Government opposes Wood's release.

1

Because the Court concludes that oral argument will not aid the decisional process, the Court will decide the motions on the parties' briefing. E.D. Mich. LCrR 12.1(a); LR 7.1(f)(2). For the reasons below, the Court will deny Wood's motion for counsel and his motion for release.

## BACKGROUND

On January 30, 1998, Wood robbed a bank in Southfield, Michigan at gunpoint. Ten days later, Wood robbed a gas station at gunpoint. The State of Michigan arrested Wood and charged him for the gas station robbery.

On May 28, 1998, Wood was charged in federal court for the bank robbery. (ECF No. 1). On July 29, 1998, Wood pleaded guilty to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a). (ECF No. 4). His Guidelines Range called for a sentence between 188 and 235 months on his federal conviction.

On September 9, 1998, a Michigan jury convicted Wood for the gas station robbery and for being a felon in possession of a firearm. On September 28, 1998, Wood was sentenced to a minimum of 20 years in state prison. His state sentence contemplated a maximum term of 30 years.

On November 2, 1998, the Honorable Lawrence P. Zatkoff sentenced Wood to 188 months' imprisonment on his federal conviction. (ECF No. 11). This sentence was at the bottom of Wood's Guidelines Range. Judge Zatkoff ordered that Wood's federal sentence would run consecutive to his state sentence.

Wood appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed his sentence on April 17, 2000. *United States v. Wood*, 209 F.3d 847 (6th Cir. 2000). Wood petitioned for a writ of certiorari from the United States Supreme Court, but his petition was denied on July 31, 2000. (ECF No. 31).

Wood served 20 years in state prison. On May 7, 2018, Wood finished his state sentence and was transferred to federal custody to begin serving his federal sentence. According to the Bureau of Prisons's ("BOP") website, Wood is expected to be released on June 21, 2031.

In early 2020, COVID-19 hit the United States. On June 30, 2020, the Court received and docketed a motion for compassionate release from Wood. (ECF No. 33).[1] Wood argues that he may develop life-threatening symptoms if he is infected with COVID-19 because he has high blood pressure and heart problems. Wood also objects to the BOP's use of his facility, USP Thomson, as a "quarantine intake" for the federal detention center in Chicago, Illinois. Wood contends that these circumstances present extraordinary and compelling reasons that justify his compassionate release.

On July 28, 2020, the Government filed a response, opposing Wood's release. (ECF No. 38). As a procedural matter, the Government argues that the Court should deny Wood's motion as unexhausted because he did not appeal the BOP's denial of his administrative request for compassionate release, or wait 30 days from transmitting his compassionate release request to his warden before filing his motion with the Court. As to the merits of Wood's motion, the Government states that Wood's medical conditions "may" constitute "extraordinary and compelling reasons for release," but argues that Wood's release would endanger the public and would not be supported by the factors outlined in 18 U.S.C. § 3553(a). The Government also filed a sealed copy of Wood's medical records. (ECF No. 39).

---

[1] Wood's motion is dated June 4, 2020. The delay between Wood's mailing of his motion and his motion's appearance on the docket is attributable to the sudden closure of the Theodore Levin United States Courthouse and the resulting disruption in the ability of the Clerk's Office to process prisoner mail.

## ANALYSIS

### I.      Motion to Appoint Counsel

Wood asks for appointed counsel as he seeks compassionate release. (ECF No. 33, PageID 7). The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Wade*, 388 U.S. 218, 224 (1967).  The Supreme Court has held, however, that a criminal defendant's post-conviction right to counsel extends only to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Thus, the decision of whether to appoint counsel to Wood for the purpose of seeking compassionate release is a decision within the sound discretion of the Court. *United States v. Stephens,* 2020 WL 3250226 at *2 (E.D. Mich. June 16, 2020).

Having considered Wood's request for the appointment of counsel, the Court declines to appoint counsel.  Motions for compassionate release are not complex, either legally or factually. Wood appears able to draft and file a motion for compassionate release on his own, and adequately explain the reasons why he believes his release is appropriate. Accordingly, the Court will deny Wood's motion to appoint counsel.

### II.      Motion for Compassionate Release

#### A.      Exhaustion

As a threshold matter, the Government argues that Wood's motion should be denied without prejudice because he did not exhaust his administrative remedies before filing it.

18 U.S.C. § 3582(c)(1)(A) allows a criminal defendant to move to modify his term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" The United States Court of Appeals for the Sixth Circuit recently examined the nature of these prerequisites for a defendant to properly file a motion for compassionate release.  In *United States v. Alam*, 960 F.3d 831 (6th Cir. June 2, 2020), the Sixth Circuit held that § 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule. *Id*. at 833. If a defendant fails to comply with this rule, and the Government timely objects to his motion on that basis, the Court must enforce the exhaustion requirement and deny the motion without prejudice. *Id*. at 834, 836. The Court may not craft an exception to this statutory exhaustion requirement, even for a motion filed because of a legitimate fear of COVID-19. *Id*. at 834.

Here, Wood filed his administrative request for compassionate release on May 13, 2020. The BOP denied his request that same day, stating that Wood could raise an internal appeal. Wood then signed and mailed his motion on June 4, 2020; he did not exhaust his appeal options or wait 30 days before filing his motion.

Wood's failure to strictly comply with § 3582(c)(1)(A)'s conditions compels denial of his motion for compassionate release under *Alam*. However, the Court will proceed to the merits of Wood's motion for three reasons. First, Wood's motion was not docketed until July 30, 2020, well outside the 30-day window. As far as the Government and Court is concerned, this motion proceeded as if Wood had waited 30 days. Wood's failure to exhaust did not prejudice the Government. Second, judicial economy supports an adjudication on the merits. The Government has responded to Wood's arguments on the merits and these issues are ready for the Court's review now. Third, and perhaps most critically, the BOP has had at least one opportunity to review Wood's grounds for compassionate release on the merits. The BOP has already denied Wood's

request, so its interests in investigating and deciding compassionate release requests before prisoners can seek relief from the courts has been addressed in this case.

**B.    Merits**

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement" with which the Court must comply when considering Wood's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances under this fourth category. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

"In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines." *United States v. Shah*, 2020 WL 1934930 at *1 (E.D. Mich. April 22, 2020) (citations omitted).

### i.    Extraordinary and Compelling Reasons / U.S.S.G. § 1B1.13

The First Step Act transferred the power to determine whether "extraordinary and compelling reasons" exist from the BOP to the federal courts. *See, generally, United States v. Young*, 2020 WL 1047815 at *3-6 (M.D. Tenn. March 4, 2020) (describing changes in the statutory and regulatory standards that governed compassionate release motions from 1984 to the present). Before the First Step Act, the BOP made that call by applying a standard articulated by the United States Sentencing Commission in an Application Note to U.S.S.G. § 1B1.13. *Id.*  Today, that finding is not predicated on either that Application Note or the BOP's judgment because the First Step Act gave the judiciary "the authority to reduce a prisoner's sentence upon the [C]ourt's independent finding of extraordinary or compelling reasons." *Id*. at *6 (collecting cases). To make this finding, however, the Court may still look to § 1B1.13's Application Note for guidance in applying this "vague standard." *United States v. Ebbers*, -- F.Supp.3d --, 2020 WL 91399 at *2 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019).[2]

---

[2] Whether the Application Note to § 1B1.13 restricts the Court's analysis of "extraordinary and compelling reasons" or is merely guidance is not dispositive of this motion, or likely of any other similar motion. Even if § 1B1.13 is only guidance, the defendant's release must still be consistent with that section under 18 U.S.C. § 3582(c)(1)(A) (requiring a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission.")

To begin, § 1B1.13's Application Note provides certain circumstances in which a prisoner's medical condition constitutes an extraordinary and compelling reason for a sentence reduction:

1. **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   **(A) Medical Condition of the Defendant.**

       **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

       **(ii)** The defendant is

           **(I)** suffering from a serious physical or medical condition,

           **(II)** suffering from a serious functional or cognitive impairment, or

           **(III)** experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. (n.1) (2018).

The Court has reviewed Wood's motion and medical records, and concludes that Wood does not satisfy either circumstance described in § 1B1.13's Application Note. To be sure, the Centers for Disease Control and Prevention ("CDC") recognize that people with hypertension "might be at an increased risk for severe illness from COVID-19." *See People with Certain*

8

*Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 6, 2020). But Wood's hypertension appears to be controlled well by his current medication. And although Wood alleges that he suffered a mild heart attack in 2016, he has had seven normal cardiovascular exams in the past two years.  (ECF No. 39-1, PageID 49, 58, 72, 99, 177, 181, 326). One of Wood's BOP clinicians estimates that his risk of cardiovascular disease is only 6.7%. (ECF No. 39-1, PageID 201).

In short, even when considered together, there is  no indication that Wood's hypertension and heart issues can be considered a "terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or that they can be considered a "serious physical or medical condition" that "substantially diminishes [his ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."

Even outside the guidance provided by the Application Note, the current circumstances do not provide extraordinary and compelling reasons to reduce Wood's sentence. A court in this district has defined "extraordinary" as "exceptional to a very marked extent," and "compelling" as "tending to convince or convert by or as if by forcefulness of evidence." *Shah*, 2020 WL 1934930 at *2 (E.D. Mich. April 22, 2020) (quoting Webster's Third International Dictionary, Unabridged (2020)). Another court in this district has described the requirements of "'extraordinary' as beyond what is usual, customary, regular, or common," and "'compelling reason' as one so great that irreprovable harm or injustice would result if the relief is not granted." *United States v. Sapp*, 2020 WL 515935 at *3 (E.D. Mich. Jan. 31, 2020) (citations omitted).

9

Wood's fear of COVID-19 is understandable. But the BOP reports that there are currently no cases of COVID-19 at Wood's facility, USP Thomson. And the BOP has instituted comprehensive measures to prevent or mitigate the spread of COVID-19 within its facilities. Moreover, Wood's fear is also speculative. Even if his medical conditions place him at  "an elevated risk of developing the more severe symptoms of COVID-19, [] that generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release. . . ." *United States v. Peaks*, 2020 WL 2214231 at *2 (E.D. Mich. May 7, 2020); *see also Shah*, 2020 WL 1934930 at *2 ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release.")

Thus, the Court concludes that Wood has not shown extraordinary and compelling reasons to reduce his sentence and that Wood's release would not be consistent with the applicable policy statements issued by the Sentencing Commission.

### ii.    18 U.S.C.§ 3553(a) Factors

Moreover, the Court concludes that the 18 U.S.C. § 3553(a) factors do not favor Wood's release at this time. Although Wood has spent two decades in prison, only a short amount of this time was for his conviction in this case; he has served only 27 months of his 188-month federal sentence. And before his conviction in this case, Wood had a significant criminal history, including convictions for breaking and entering, grand theft, larceny, domestic violence, robbery, and armed robbery. Allowing Wood to serve only a small fraction of the sentence imposed for his conviction in this case would not reflect the seriousness of the offense, promote respect for the law, provide

just punishment, afford adequate deterrence, or protect the public from further crimes of the defendant.

**CONCLUSION**

For the reasons above, the Court **ORDERS** that Wood's motion for appointment of counsel is **DENIED**.

Further, the Court **ORDERS** that Wood's motion for compassionate release (ECF No. 33) is **DENIED**. Wood has not shown that there are extraordinary and compelling reasons to reduce his sentence, that his sentence would be consistent with applicable policy statements issued by the Sentencing Commission, or that the § 3553(a) sentencing factors favor his release.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 10, 2020

11
